UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS K. REILLY, : | |
| : | Civil Case Number |
| *Plaintiff*, : | |
| : | 3:16-CV-2024 (VLB) |
| v. : | |
| : | March 30, 2018 |
| DEPARTMENT OF JUSTICE, : | |
| : | |
| *Defendant*. : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT NO. 66]**

I. Introduction

Plaintiff Thomas K. Reilly brings this action seeking to compel the production of documents responsive to a Freedom of Information Act ("FOIA") request first submitted to the Federal Bureau of Investigation ("FBI") on February 23, 2016. The request sought records relating to the criminal investigation and trial of Joseph P. Ganim, the present and former mayor of Bridgeport, CT. Now pending before the Court is Defendant's Motion for Summary Judgment [Dkt. No. 66]. For the reasons that follow, Defendant's motion is GRANTED.

II. Background

    A. The Record on Summary Judgment

"A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). A party may also support their assertion by "showing that the materials cited do not establish the absence . . . of a genuine dispute." *Id.*

1

Cited documents must consist of either "(1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." Local R. Civ. P. 56(a)3; *see also* Fed. R. Civ. P. 56(c)(4).

If a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact, the Court may "consider the fact undisputed for purposes of the motion [and] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e); *see also* Local R. 56(a)3 ("[F]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with [Local] Rule 56(a)1 or in the Court imposing sanctions, including . . . an order granting the motion if the undisputed facts show that the movant is entitled to judgment as a matter of law.").

While Federal Rule of Civil Procedure 56(e) also permits the Court to give a party the "opportunity to properly support or address the fact," such a course of action is not warranted in this case. Defendant attached as an exhibit to its motion for summary judgment, the "Notice to Self-Represented Litigant Concerning Motion for Summary Judgment as Required by Local Rule of Civil Procedure 56(b)," which the Court requires to be served on all pro se litigants along with motions for summary judgment, and which explains in detail the Court's requirements with respect to Rule 56(a) statements. Although he is pro se, Plaintiff's briefs display an unusually astute understanding of the legal issues

involved in this case, as well as a facility with writing. It is therefore reasonable to believe that Plaintiff understood Local Rule 56(a)'s requirements, but nevertheless chose not to submit a Rule 56(a) statement. Consequently, the Court will deem admitted any facts in the Defendant's Rule 56(a)(1) statement that are supported by evidence.

B. Procedural History

By letter dated February 22, 2016, Plaintiff submitted a FOIA request to the FBI, seeking the production of documents relating to a criminal investigation and prosecution which led to the conviction thirteen years earlier of former Bridgeport Mayor Joseph Ganim. In particular, he requested:

> Copies of all audio surveillance tapes derived from "bugs", wiretaps or other means, whether in digital or other formats, (and written transcripts of such tapes developed during the FBI and IRS investigation of municipal corruption in Bridgeport, Connecticut which resulted in the March 19, 2003 conviction of Joseph P. Ganim (former and current Mayor of Bridgeport, CT,) in the U.S. District Court for the District of Connecticut.

[Dkt. No. 1 at 5]. By letter dated February 29, 2016, the FBI Record/Information Dissemination Section ("RIDS") Chief, David M. Hardy, acknowledged receipt of the FOIA request, and noted:

> The FBI recognizes an important privacy interest in [records concerning one or more third party individuals]. You may receive greater access to these records if they exist by providing one of the following: (1) an authorization and consent from the individual(s) . . . ; (2) proof of death . . . ; or (3) a justification that the public interest in disclosure outweighs personal privacy."

*Id.* at 6. By letter dated March 9, 2018, Plaintiff revised his request to include both audio and video recordings. *Id.* at 8. In the same letter, Plaintiff argued that there was a compelling public interest in the disclosure of the requested records, because Joseph P. Ganim was a public official convicted of racketeering,

3

racketeering conspiracy, extortion, honest services mail fraud and bribery. *Id.* at 8-9. Plaintiff also identified instances in which the FBI released surveillance tapes in other public corruption cases. *Id.* at 9-10.

By letter dated May 17, 2016, Hardy informed Plaintiff that he had determined "unusual circumstances" applied to Plaintiff's request, and stated that "unusual circumstances" included (1) "a need to search for an collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS)"; (2) "a need to search for, collect, and examine a voluminous amount of separate and distinct records"; or (3) "a need for consultation with another agency or two or more DOJ components." *Id.* at 11. By letter dated July 6, 2016, Hardy stated, "Audio and video records were reviewed, and it was determined that they should be withheld in their entirety pursuant to exemption (b)(3) and in accordance with 18 U.S.C. 2518." *Id.* at 15.

Plaintiff filed an administrative appeal of the FBI's determination by letter dated August 15, 2018 and received August 18, 2016. [Dkt. No. 1 at 16-17; Dkt. No. 66-4, Exh. K]. Administrative Specialist Priscilla Jones acknowledged receipt of the appeal by letter dated August 24, 2016. [Dkt. No. 1 at 19]. After Plaintiff filed this civil action on December 12, 2016, the Office of Information Policy ("OIP") advised Plaintiff that his administrative appeal was closed due to his pending lawsuit. [Dkt. No. 66-4, Exh. N].

C. <u>FBI Efforts to Locate Requested Documents</u>

Upon receipt of Plaintiff's FOIA request, RIDS personnel searched FBI's electronic index of its Central Records System ("CRS"). [Dkt. No. 66-1 ("Hardy

4

Decl.") ¶¶ 24-32]. CRS is the principal records system searched by RIDS, to locate information responsive to most FOIA request, because CRS is where the FBI indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval. *Id.* ¶ 33. The FBI concluded that no other records systems other than CRS would likely maintain documents responsive to Plaintiff's request. *Id.*

Within CRS, RIDS located a single responsive "main" file concerning Joseph Ganim. *Id.* ¶ 32. Within this main file, 116 units ("serials") of records that were identified as electronic surveillance, and four were identified as potentially responsive volumes of transcripts. *Id.* ¶ 34. Each serial contains anywhere from one to forty-five tapes. *Id.* Upon further review, the FBI determined that one of the serials was non-responsive, and that a second serial had been destroyed before Plaintiff submitted his FOIA request. *Id.* ¶¶ 35-36. Of the remaining 114 serials, 105 were gathered using court-authorized Title III wiretaps. Id. ¶ 37.

The FBI maintains that the non-Title III serials contain private information that exempt them from disclosure. *Id.* ¶ 50. This private information includes the names or other identifying information of "third parties merely mentioned," "FBI special agents," "third parties of investigative interest," and "third parties who provided information to the government." *Id.* ¶¶ 50-56. Additionally, two of the nine non-Title III serials were collected via non-Title III surveillance, three were obtained pursuant to grand jury subpoena, and four were collected via a confidential source. *Id.* ¶¶ 58, 61, 64.

III. **Standard of Review**

"FOIA was enacted to promote honest and open government, and to ensure public access to information created by the government in order to hold the governors accountable to the governed. It strongly favors a policy of disclosure and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act." *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quotations and citations omitted). "FOIA instructs district courts to review *de novo* agency decisions to withhold records. The *de novo* standard of review for FOIA cases is well established in this circuit." *The Few, the Proud, the Forgotten v. United States Dep't of Veterans Affairs*, 254 F. Supp. 3d 341, 352-53 (D. Conn. 2017).

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *New York Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007) (citing *Carney v. Dep't of Justice*, 19 F.3d 807, 812-13 (2d Cir. 1994). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When an agency withholds material under a FOIA exemption, "[t]he agency asserting the exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." *New York Times*, 756 F.3d at 112. "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812. In other words, "[a]ffidavits submitted by an agency are accorded

a presumption of good faith," so long as they are "reasonably detailed." *Id.*; *The Few, the Proud, the Forgotten*, 254 F. Supp. 3d at 352-53. "[W]here a plaintiff has not provided evidence that an agency acted in bad faith, 'a court may award summary judgment solely on the basis of information provided by the agency in declarations.'" *Boyd v. Exec. Office for United States Attorneys*, 87 F. Supp. 3d 58, 68 (D.D.C. 2015) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)).

IV. Discussion

Defendant's Motion for Summary Judgment relates to all requested recordings other than those offered and admitted as exhibits during the trial in *United State v. Ganim*, 3:01-CR-263 (JBA) (D. Conn.). Defendant argues that these remaining documents are exempted from disclosure pursuant to FOIA Exemptions 3, 6, and 7, as set forth in 5 U.S.C. § 552(b). FOIA is to be "construed broadly to provide information to the public in accordance with its purposes; for the same reason, the exemptions from production are to be construed narrowly." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *Ethyl Corp. v. EPA,* 25 F.3d 1241, 1245 (4th Cir. 1994)).

A. Exemption 3

Exemption 3 exempts from disclosure under FOIA:

matters that are . . . specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(2). "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents;

7

the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 72 (2d Cir. 2009) (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C.Cir. 1987)). Defendant argues that Exemption 3 permits the FBI not to release the requested recordings because (1) Title III wiretap recordings are categorically exempted from disclosure by the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520; and (2) three of the nine non-Title III recordings were obtained via federal grand jury subpoena, and their release is barred by Federal Rule of Criminal Procedure 6(e).

1. <u>Title III Wiretap</u>

"Title III provides that any communications intercepted by the wiretap shall be recorded 'if possible,' and that the recordings 'shall be made available to the judge issuing [an order permitting the wiretap interception] and sealed.' *Id.* § 2518(8)(a). The recordings shall be used only by law enforcement officers 'to the extent such use is appropriate to the proper performance of [their] official duties.' *Id.* § 2517." *House v. U.S. Dep't of Justice*, 197 F. Supp. 3d 192, 206 (D.D.C. 2016).

The Second Circuit has not specifically addressed whether Exemption 3 exempts Title III intercepted communications from disclosure. However, the D.C. Circuit held in *Lam Lek Chong v. U.S. Drug Enf't Admin.*, 929 F.2d 729, 733 (D.C. Cir. 1991) that "intercepted communications" obtained pursuant to a Title III wiretap fall "squarely within the scope" of Exemption 3. And at least one court within the District of Connecticut has recognized the *Lam Lek Chong* court's

8

interpretation of Title III. *See Chance v. Cundy*, No. CIV.A. 303CV40(JCH), 2004 WL 1497547, at *3 (D. Conn. June 25, 2004) (quoting *Lam Lek Chong*, 929 F.2d at 732) ("The purpose of this Act is 'to control conditions under which interception will be permitted in order to safeguard privacy of wire and oral communications.'"). Given the D.C. Circuit's considerable experience deciding FOIA cases, the Second Circuit's frequent reliance upon D.C. Circuit precedent in FOIA cases, and Judge Hall's citation of *Lam Lek Chong* in *Chance,* this Court adopts the D.C. Circuit's approach, and holds that the 114 serials containing Title III intercepted communications are protected from disclosure by Exemption 3.

While the parties do not dispute that the Title III recordings played in open court during Joseph Ganim's trial are public records and therefore subject to disclosure, and the parties do not dispute that the public record recordings have now been disclosed, Plaintiff argues that other Title III recordings listed on the Government's exhibit list, but not ultimately admitted at trial should also be disclosed pursuant to the public records exception. The Court disagrees. The mere fact that the public record reveals the existence of a recording does not transform the entire recording into public record. To find otherwise courts the absurd result that any time the existence of a wiretap recording is revealed in a court proceeding—including in a Vaughn index during a FOIA civil suit—the entire recording must be released. Further, parties are required to disclose all evidence which may be offered prior to trial. *See, e.g.*, Fed. R. Crim. P. 16; Crim. App'x, Standing Order on Discovery, Local R. Crim. P. Such disclosure fosters the fair and efficient administration of justice which would be frustrated by a

blanket rule requiring disclosure of evidence listed for possible admission and later not introduced into evidence. For these reasons, the Court finds that all Title III wiretap communications responsive to Plaintiff's request—other than those already produced to Plaintiff—are protected from disclosure by Exemption III. Defendant's summary judgment motion is GRANTED as to these documents.

### 2. Recordings Obtained via Grand Jury Subpoena

Pursuant to Federal Rule of Criminal Procedure 6(e), "a matter occurring before the grand jury" must not be disclosed by, inter alia, "an attorney for the government" or "any government personnel—including those of a state, state subdivision, Indian tribe, or foreign government—that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law." Fed. R. Crim. P. 6(e)(2)(vi), 6(e)(2)(vii), 6(e)(3)(A)(ii). "A person to whom [a grand jury matter] has been disclosed under Rule 6(e)(3)(A)(ii) may use that information only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law." Fed. R. Crim. P. 6(e)(3)(B).

By the plain language of this rule, and because responding to a FOIA request does not assist a government attorney's enforcement of federal criminal law, no government official may disclose "grand jury matters" in response to a FOIA request. This brings "matters before a grand jury" within the aegis of Exemption 3. *See Germosen v. Cox*, No. 98 CIV. 1294 (BSJ), 1999 WL 1021559, at *13 (S.D.N.Y. Nov. 9, 1999) ("It is well established that this rule, which imposes a

general requirement of secrecy for information relating to the grand jury process, qualifies as an Exemption 3 withholding statute.").

The scope of "grand jury matters" "encompasses 'documents subpoenaed as exhibits' as well as 'potential documentary exhibits' which, if turned over, 'would reveal the direction and strategy of an investigation.'" *Local 32B-32J, Serv. Employees Int'l Union, AFL-CIO v. Gen. Servs. Admin.*, No. 97 CIV. 8509 (LMM), 1998 WL 726000, at *6 (S.D.N.Y. Oct. 15, 1998) (quoting *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 869-70 (D.C. Cir. 1981)). "Rule 6(e) also protects from disclosure documents that would reveal the identity of grand jury witnesses or other secret aspects of the proceedings." *Germosen*, 1999 WL 1021559, at *13. Defendant offers evidence that "the information withheld consists of the company names and/or employees served with Federal Grand Jury subpoenas and information identifying specific records subpoenaed by the Federal Grand Jury." [Hardy Decl. ¶ 63]. As the Defendant has offered undisputed evidence that the withheld documents would reveal information that courts within the Second Circuit have found qualify as "grand jury matters" protected from disclosure, the Court must GRANT summary judgment with respect to the three serials withheld under Exemption 3 for their role in grand jury proceedings.

B. Exemptions 6 and 7(C)

The Court next considers whether Exemptions 6 and 7(C) bar disclosure of the remaining audio recordings because they feature or mention (1) law enforcement agents; (2) Ganim; and (3) other third parties. Defendant argues first

11

that Ganim and others featured, mentioned, or identified in the responsive recordings retain substantial privacy rights in these recordings because "[i]ndividuals have substantial privacy interests in law enforcement records, whether they are suspects, witnesses, cooperators, informants, law enforcement officials, victims or merely mentioned."  [Hardy Decl. ¶ 48].

Exemption 6 exempts from disclosure under FOIA "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) exempts from disclosure under FOIA "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Because Exemption 7(C) lacks the "clearly" qualifier present in Exemption 6, Exemption 7(C) is broader than Exemption 6.  *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("[B]ecause Exemption 7(C) permits withholding of such records if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a '*clearly* unwarranted' invasion to justify nondisclosure, Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material.").  Additionally, because all of the documents at issue in this case were compiled for law enforcement purposes, reliance on Exemption 6 to protect privacy interests is not necessary.  The Court's ruling on the applicability of Exemption 7(C) will be therefore be dispositive of all issues relating to those

recordings Defendant seeks to withhold in order to protect individuals' privacy interests.

In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), "the Court must first determine 'whether there is any privacy interest at stake.' If there is a privacy interest at stake, the Court must then 'balance the public interest in disclosure against the [privacy interest].'" *Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 973 F. Supp. 2d 306, 315 (S.D.N.Y. 2013) (quoting *Am. Civil Liberties Union*, 655 F.3d at 6). "Where a legitimate privacy interest is implicated, the requester must '(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest.'" *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (quoting *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007)). The only relevant public interest that weighs into the calculus for purposes of Exemption 7(C) is "the citizens' right to be informed about 'what their government is up to.'" *Boyd*, 87 F. Supp. 3d at 73 (D.D.C. 2015) (quoting *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989)).

With respect to law enforcement officials, Defendant argues that FBI Special Agents "have privacy interests in being free from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI" and that "[i]t is possible for an individual targeted by . . . law enforcement actions to . . . seek revenge on the law

enforcement agents involved in a particular investigation." [Hardy Decl. ¶ 52]. "Federal law enforcement personnel have a recognized privacy interest in their identities because of the work they perform. Revealing the identities of these persons could subject them to threat or harassment while they conduct their official duties and personal affairs." *Peeler v. U.S. Dep't of Justice*, No. 3:13-CV-1323 JAM, 2015 WL 418136, at *5 (D. Conn. Jan. 30, 2015); *see also Halpern v. F.B.I.*, 181 F.3d 279, 296–97 (2d Cir. 1999) ("Government employees and officials, particularly law enforcement personnel, have privacy interests to the extent that revelation of their identities could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs."). Thus, the agents featured or mentioned in the recordings have a privacy interest in information in the recordings that could be used to identify them.

With respect to third parties, Defendant argues that "[r]eferences connecting individuals to law enforcement investigations can be embarrassing and stigmatizing to those individuals, their families, and associates." [Hardy Decl. ¶ 48]. With respect to Ganim specifically, Defendants argue that the fact of his conviction "does not extinguish his/her privacy interests in an investigative file or constitute a waiver of all privacy interests in the actual information contained in the file. Mr. Ganim's privacy interest, while somewhat diminished given his prior federal conviction, is still substantial enough to warrant protecting the requested records pursuant to FOIA Exemptions 6 and 7(C)." *Id.* ¶ 49.

"[A] third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and

14

. . . when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.'" *Reporters Comm.*, 489 U.S. at 780. Additionally, "[a]s a general rule, third-party identifying information contained in [law enforcement] records is categorically exempt from disclosure, unless there is an overriding public interest in disclosure." *Boyd*, 87 F. Supp. 3d at 73 (quotations and citations omitted). This is particularly true where "the material in question demonstrates or suggests they had at one time been subject to criminal investigation." *Halpern*, 181 F.3d at 297; *see also Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) ("[I]individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation. That privacy interest also extends to third parties who may be mentioned in investigatory files, as well as to witnesses and informants who provided information during the course of an investigation."). Because all third parties featured or mentioned in the recordings will in some way be associated with a criminal investigation, these third parties have a privacy right in any identifying information in the recordings.

      The same is true of a private individual with a criminal conviction. The Supreme Court has held that "although there is undoubtedly some public interest in anyone's criminal history, especially if the history is in some way related to the subject's dealing with a public official or agency, the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public

scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *Reporters Comm.*, 489 U.S. 749, 774 (1989).

Plaintiff argues that Ganim's case is distinguishable from that of other individuals convicted of a crime, because as the past and present mayor of Bridgeport, he is a public figure. Consequently, his name, likeness, voice, and the fact of his criminal conviction are widely known. While a criminal defendant's status as a public figure may lessen his privacy interests, it does not eliminate them and can in fact increase the intrusion into the public figure's privacy. See *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 865 (D.C. Cir. 1981) (While status as a public figure "might somewhat diminish an individual's interest in privacy . . . revelation of the fact that an individual has been investigated for suspected criminal activity represents a significant intrusion on that individual's privacy cognizable under Exemption 7(C). The degree of intrusion is indeed potentially augmented by the fact that the individual is a well known figure."); *Times Picayune Pub. Corp. v. U.S. Dep't of Justice*, 37 F. Supp. 2d 472, 478 (E.D. La. 1999) ("While it is true that a public figure's privacy rights may be weighted differently than those of a private citizen under the First Amendment a person's status as a 'public figure' does not eviscerate his or her privacy interests under the FOIA.").

Having established that law enforcement agents and third parties have a privacy interest in any information that could be used to identify them in the recordings, and that Ganim has a privacy interest in records concerning his

criminal history, the Court must next determine whether any public interest outweighs these privacy interests. Plaintiff argues that his FOIA request is aimed at exposing the misconduct of a government figure, which dovetails with FOIA's purpose. Defendant counters that because Ganim is not a government official with the agency to which Plaintiff directed his FOIA request, and is not a federal government official, the release of law enforcement information about him does not elucidate "government activities" as those activities have been defined in FOIA case law.

Citing *Peeler*, Defendant argues that a public interest in disclosure only exists if "the information sought would shed light on the FBI's performance of its mission." 2015 WL 418136, at *6. Indeed, in *Reporters Committee*, the Supreme Court stated that the purpose of FOIA is "to open *agency action* to the light of public scrutiny" and that purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about *an agency's own conduct*." *Reporters Comm.*, 489 U.S. at 772-73 (1989) (emphasis added) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 371 (1976); *EPA v. Mink,* 410 U.S. 73, 80, (1973) (Douglas, J., dissenting)). Numerous courts have interpreted the Supreme Court's holding in *Reporters Committee* as extending FOIA "only to those records which reveal something about *agency action*," *Nation Magazine*, 71 F.3d at 894. *See also, e.g.*, *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.,* 554 F.3d 1046, 1051 (D.C. Cir. 2009) ("The requested information must shed light on an agency's performance of its statutory duties . . . .

Information about private citizens . . . that reveals little or nothing about an agency's own conduct does not serve a relevant public interest under FOIA"); *McGehee v. U.S. Dep't of Justice*, 800 F. Supp. 2d 220, 232-33 (D.D.C. 2011) ("Whether disclosure of private information is warranted under Exemption 7(C) turns upon whether the information sheds light on an agency's performance of its statutory duties. Thus, the requested information must shed light on the agency's own conduct and not merely on the subject matter of the underlying law enforcement investigation. Our Court of Appeals has held categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."). Thus, unless the requested information can shed light on the FBI's performance of its mission, it will be exempt from disclosure.

Plaintiff has offered no evidence that the identities of law enforcement officials and third parties are relevant to the FBI's performance of its statutory duties. While Plaintiff accuses one agent who worked on the case of joining Ganim's 2015 election campaign after he retired from the FBI, he offers no evidence that this actually occurred, and no evidence that this agent's work on Ganim's criminal case was subpar or that he was involved in any unethical activities. Similarly, the fact that some of the third parties may have been involved in the same criminal activities as Ganim does not mean that their identities are needed to properly understand the FBI's performance of its duties

18

during the Ganim investigation. Therefore, no public interest outweighs the agents' and third parties' interests in preventing the disclosure of their identities in connection with Ganim's investigation.

While other third parties' and law enforcement officials' privacy interests involve the connection of identifying information with a criminal investigation, and it might be possible to protect these interests by redacting or otherwise segregating this information,[1] the Defendant cannot both comply with Plaintiff's FOIA request and protect Ganim identity. Plaintiff's FOIA request is directed specifically to evidence of Ganim's criminal conduct. Consequently, Ganim has a privacy interest in all of the information that the government maintained in connection with his criminal investigation. Because Plaintiff's FOIA request is aimed at Ganim's conduct, rather than the FBI's performance of its duties, no countervailing public interest in disclosure exists.

Because Ganim retains a privacy interest in the FBI's investigation into his criminal conduct, and because other third parties and law enforcement agents have privacy interests in prevent the disclosure of their identities in connection with a criminal investigation, Defendant's motion must be GRANTED with respect to its claims under Exemption 7(C).

---

[1] **Defendant seeks to prevent the wholesale disclosure of the recordings based on the potential that third parties and law enforcement maintain privacy interests in the sounds of their voices, or that their voices are themselves identifying information. However, Defendant has offered no evidence from which the Court can conclude that this is the case, and has cited no cases holding that the sound of an individual's voice is necessarily identifying. The Court declines to rule on this issue, in light of the fact that other privacy interests render the requested recordings exempt from disclosure.**

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. No. 66] is GRANTED. The Clerk is directed to enter judgment for the Defendant and to close this file.

**IT IS SO ORDERED.**

/s/

**Hon. Vanessa L. Bryant
United States District Judge**

**Dated at Hartford, Connecticut: March 30, 2018**